UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――

TIMOTHY BALDWIN,

                Plaintiff,                       Case No. 1:16-cv-962

v.                                              Honorable Janet T. Neff

SHERRY BURT et al.,

                Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Timothy Baldwin presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF).  He sues the following MCF officials:  Warden Sherry Burt; maintenance worker Norm Cunningham; former Inspector and current Deputy Warden Paul Davis; Sergeant Gregory Gardner; and Hearing Investigator Laurie Goodno.  He also sues MDOC Administrative Hearing Officer Douglas J. Pallas, who is assigned to MCF.

In his lengthy complaint, Plaintiff alleges that he purchased a pair of boots from another prisoner while he was housed at the Kinross Correctional Facility in October 2008.  From that time until May 29, 2014, the boots remained part of Plaintiff's property and were searched during multiple prison transfers and dozens of cell searches.  Unbeknownst to Plaintiff, the manufacturer of the boots had inserted a bamboo sole support in the heel of the boots during manufacture.  During a mass shake-down on May 29, 2014, Defendant Cunningham, working under the supervision of Defendant Davis, peeled up the sole padding of Plaintiff's right boot and discovered a piece of bamboo.  Defendants Cunningham and Davis characterized the item as a "prison made shank."  (Compl., ECF No. 1, PageID.10.)  Davis instructed Cunningham to write a Class I misconduct ticket against Plaintiff for possession of the weapon.  He also directed that both the boots and Plaintiff's hobbycraft materials, out of which the shank was believed to have been fabricated, be removed from the cell as contraband.  Cunningham issued both the misconduct ticket and a contraband removal sheet.  Plaintiff complains that both the contraband removal sheet and the misconduct ticket were improperly completed, as they did not contain all necessary information, particularly the location at which the items were found.

- 2 -

Defendant Gardner reviewed the misconduct ticket with Plaintiff on June 5, 2014. Gardner, however, had altered the ticket, changing the charge from possession of dangerous contraband to possession of a weapon.  Plaintiff contends that the alteration to the charge violated Mich. Dep't of Corr., Policy Directive 03.03.105 20 MM.  On June 6, 2014, Defendant Pallas conducted a formal misconduct hearing on the ticket, as modified by Gardner.  Upon consideration of the evidence, Pallas rejected Plaintiff's claim that the ticket had been improperly altered and found Plaintiff guilty of possession of a weapon.  Pallas sanctioned Plaintiff to 10 additional days' segregation and 15 days' loss of privileges.

Plaintiff was released from segregation on June 16, 2014.  On June 19, Plaintiff was told to report to the control center to see Sergeant Timothy Gonzalez.  Gonzalez returned Plaintiff's boots to him.  Plaintiff noticed that his right boot sole had been completely removed and part of his left boot had been peeled up.  Plaintiff returned to his cell with his boots.  Curious about why Cunningham and Davis would have set him up on a misconduct charge, Plaintiff examined his left boot, using his hobbycraft scissors to partially pry up his left boot sole.  When he did so, he discovered that the object he had been shown as the one taken from his right boot matched an object in the left boot sole.

Plaintiff immediately carried his boots to Prison Counselor Tommie D. Calvin.  He explained that the presence of the object in the left boot demonstrated that the objects were not weapons, but were instead part of the support structure of the boot.  Calvin promptly called Deputy Warden Shane Jackson to advise him of the discovery.  Jackson told Calvin to have Plaintiff raise the issue and introduce the evidence in an appeal of his misconduct conviction.  Calvin then tried to give the boots back to Plaintiff, but Plaintiff refused, indicating that he feared being found in

- 3 -

possession of a boot containing the sole supporter, because it could lead to him again being convicted of making weapons.  Calvin therefore kept the boots.

The following day, on June 20, 2014, Plaintiff saw Defendants Davis and Burt, together with a representative from Lansing, performing a walk-through in Unit 2.  Plaintiff rushed downstairs, catching Defendant Burt and the others at the front desk, where Officer Calvin was working.  Plaintiff approached Defendant Burt about the situation, explaining what had happened with the boots.  Calvin went into the office and produced the boots.  As a result, Burt instructed Calvin to remove the arch support from the left boot.  She also instructed Calvin to call to have Plaintiff removed from sanctions and reinstated in his job.  Defendant Burt allegedly told Plaintiff that she would begin the process of removing the misconduct report from Plaintiff's record.

Calvin called Dave Brazee to convey Burt's order to have Plaintiff reinstated.  Brazee came to Unit 2 to take possession of the sole stiffener, and he informed Calvin that Plaintiff could start working again.   Brazee also contacted the classification director and had Plaintiff's job reinstated.

Plaintiff anticipated receiving documentation that the misconduct report, which could affect his parole, had been removed from his file.  Plaintiff spoke to Defendant Burt during her rounds in late June and early July.  Plaintiff concluded from those conversations that Burt was not pursuing removal of the misconduct report.  In fact, during those conversations, Burt suggested that, since Plaintiff had been the one to show her the boots, Plaintiff could have inserted the wooden shank himself.  Plaintiff alleges that prison policy does not permit Burt to only partially change misconduct sanctions, so she was required to remove the misconduct report.

- 4 -

Plaintiff filed a request for rehearing on June 30, 2014, explaining that there had not been a sufficient investigation before his conviction and that Plaintiff himself had not even known what the alleged weapon was supposed to have been until he received the hearing report four days after he was found guilty.  On August 14, 2014, MDOC Prisoner Affairs Director Richard Russell denied the request for rehearing, finding that Plaintiff had received all of the process set forth in prison policy and that insufficient evidence existed to support granting rehearing.

On October 3, 2014, Correctional Officer Dudek, working in the property room, received a response from Howard Herskovitz, a representative of the manufacturer of the boots. Herskovitz stated that the boots sent to prisons were supposed to be shankless, but if a shank had been placed in the boots in error, it would have been made from bamboo, not metal or plastic. Dudek told Defendant Hearings Investigator Goodno that he had never come across any other incident of a wooden shank in the sole of a boot, and he expressed his belief that a prisoner would not be aware of the presence of the shank unless he took the boot apart.

On October 17, 2014, Plaintiff sought judicial review of the administrative decision in the Muskegon County Circuit Court.  He argued that he was prevented from acquiring and presenting relevant evidence by an external impediment, since he did not see the ostensible weapon prior to the hearing, did not have an opportunity to examine the boots until after the hearing, and could not contact the shoe manufacturer for supporting evidence.  The circuit court denied his appeal on February 13, 2015.  (ECF No. 1-1, PageID. 147-153.)  Petitioner sought leave to appeal to the Michigan Court of Appeals.  On August 4, 2015, the court of appeals, in lieu granting leave to appeal, vacated the circuit court's order and remanded the case to the MDOC for a rehearing.  *See*

- 5 -

*Baldwin v. Mich. Dep't of Corr.*, No. 326972 (Mich. Ct. App. Aug. 4, 2015), http://publicdocs. courts. mi.gov/coa/public/orders/2015/326972(32)_order.pdf.

The Michigan Department of Corrections scheduled a rehearing on October 21, 2015. Following the rehearing, Hearing Officer Marutiak overturned the prior misconduct conviction and found Plaintiff not guilty of the misconduct charge.  (10/21/15 Hr'g Report, ECF No. 1-2, Page ID.51-53.)  The MDOC issued a notice that the misconduct had been expunged on November 3, 2015.  (PageID.141.)

Plaintiff contends that Defendant Burt violated his rights under the Fifth and Fourteenth Amendments by deliberately failing to investigate, preserve evidence and ensure that Plaintiff received due process, as well as by failing to eliminate the misconduct after she had concluded that he should have his job reinstated.  He argues that Defendant Cunningham deprived him of due process by lying to Defendant Davis about finding a shank in Plaintiff's right boot.  He also argues that Davis violated due process by falsely claiming the Plaintiff made a weapon from his hobbycraft materials.  In addition, Plaintiff alleges that Defendants Cunningham and Gardner deprived him of due process by failing to accurately prepare the charges so that Plaintiff could know what allegations he was defending.   Further, he contends that Gardner violated due process by altering the misconduct charge, in violation of policy.   Plaintiff also contends that Defendant Goodno failed to properly investigate the charges.  Finally, he contends that Defendant Pallas violated Plaintiff's right to due process by overlooking evidence and denying Plaintiff a fair hearing.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

**Discussion**

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id*.; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff first argues that a number of the Defendants' actions violated prison policy. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Plaintiff next claims that the major misconduct charges against him were false and inadequately investigated and that he was deprived of the procedural protections to which he was entitled because of inaccurate charging and processing.  He therefore claims that he was deprived of his right to due process under the Fifth and Fourteenth Amendments.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest.  In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty in the form of a longer prison sentence caused by forfeiture of good-time credits:

It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided

a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests because it does not necessarily affect the length of confinement. *Id.* at 912; *accord Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

Plaintiff has not identified any significant deprivation arising from his convictions. He was placed in administrative segregation only briefly, and he lost four days' privileges. The *Sandin* Court concluded that temporary placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). Loss of privileges for any period of days is neither atypical nor significant.

In sum, because Plaintiff's misconduct conviction neither affected the duration of his confinement nor resulted in a significant, atypical deprivation, Plaintiff was not deprived of a liberty interest by any Defendant.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  September 22, 2016                    /s/ Janet T. Neff
                                             Janet T. Neff
                                             United States District Judge

- 11 -